UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UTILITY CONSTRUCTORS, INC.

VERSUS                                              NO. 3:15-CV-00501-JWD-RLB

LIBERTY MUTUAL INSURANCE CO.

## RULING AND ORDER ON MOTION TO TRANSFER

## I.   INTRODUCTION

Before the Court is Liberty Mutual Insurance Company's § 1404(a) Motion to Transfer

Venue to More Convenient Forum ("Motion to Transfer"), (Doc. 13), filed by Liberty Mutual

Insurance Company ("Liberty," "Liberty Mutual," or "Defendant"). Utility Constructors, Inc.

("Utility" or "Plaintiff") has countered with Utility Constructor, Inc.'s Response in Opposition to

Liberty Mutual Insurance Company's § 1404(a) Motion to Transfer Venue to More Convenient

Forum ("Opposition"), (Doc. 16), to which Plaintiff has responded with Liberty Mutual

Insurance Company's Reply Memorandum in Support of Its § 1404(a) Motion to Transfer Venue

to More Convenient Forum ("Reply"), (Doc. 17). The Motion to Transfer, Opposition, and Reply

(collectively, "Motions") focus on a single issue: whether the present action, removed from the

Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on July

31, 2015, (Doc. 1), should now be transferred to the United States District Court for the Eastern

JURY

District of Louisiana ("Eastern District") from the Middle District of Louisiana ("Court" or "Middle District"), pursuant to Section 1404 of the United States Code's Twenty-Eighth Title.[1]

Based on four incontrovertible facts—the relevant dispute arose from a levee constructed in the Eastern District; numerous pertinent witnesses and interested persons reside within its borders; the overwhelming weight of the relevant documentary evidence likely, if not surely and wholly, lies in its parishes; a closely related suit has already commenced within its borders—this matter's transfer both accords with "the interest of justice" and maximizes "the convenience of parties and witnesses" alike. As written and construed, § 1404 allows, if not compels, this result, and this Court's considerable discretion does allow deviation from such certain lodestars. For these reasons, as explained more fully below, the Motion to Transfer, (Doc. 13), is GRANTED.

## II.    BACKGROUND

### A.    RELEVANT FACTS

The Parties' relationship began after Plaintiff subcontracted with Integrated Pro Services, LLC ("IPS") in the spring of 2012. (Doc. 13-1 at 1.) IPS is a contractor that maintained an office in New Orleans, Louisiana. (*Id.; see also* Doc. 1-1 at 3) On April 6, 2012, IPS entered into a contract with Plaquemines Parish Government ("Plaquemines"), as owner, whereby IPS would construct a levee in Plaquemines Parish, Louisiana ("Project"). (Doc. 13-1 at 1.) Plaquemines' maintains its office in Belle Chasse, Louisiana. (*Id.*) The designated "Project Engineer," which is both the Project's architect and engineer, C.H. Fenstermaker & Associates, Inc. ("Fenstermaker"), has an office in New Orleans. (*Id.*) Like Fenstermaker, the consultant that

---

[1] In this ruling and order ("Ruling"), any and all references to "Section []" or "§ []" are to a particular section of the this title of the United States Code.

Plaquemines retained to assist with the completion of the Project, Barowka and Bonura

Engineers and Consultants, LLC ("Plaquemines Consultant"), also maintains an office in New

Orleans. (*Id* at 2.)

    After the agreement was entered into, Defendant issued statutory payment and

performance bonds (collectively, "Bonds") in connection with IPS' work on the project. (Doc.

13-2 ¶ 12.) Plaquemines was named as the obligee and IPS was named as the principal on the

Bonds. (*Id.*) On April 29, 2012, Plaintiff and IPS entered into a subcontract ("Subcontract"). (*Id*

¶ 13.) Per this accord, UCI agreed to perform dirt work on and for the Project. (*Id.*)

    Sometime after the work began a dispute between IPS and Plaintiff arose over the latter's

allegedly deficient work and the amounts allegedly owed under the Subcontract by the former.

(*Id.* ¶ 14; *see also* Doc. 13-1 at 2.) On February 4, 2014, Plaintiff demanded payment from IPS

for the sums purportedly due. (Doc. 13-2 ¶ 14; *see also* Doc. 13-1 at 2.) When IPS did not pay,

on February 20, 2014, Plaintiff demanded payment from Defendant under the bond it had issued

("Bond Claim"). (Doc. 13-2 ¶ 15; *see also* Doc. 13-1 at 2.) After placing IPS in default under the

contract and terminating them from the Project, Plaquemines demanded that Defendant provide a

takeover plan and complete the Project consistent with its obligation under the Bond terms. (Doc.

13-2 ¶ 15; *see also* Doc. 13-1 at 2.) Eventually, Defendant agreed to fulfil its Bond obligations.

(Doc. 13-2 ¶ 15; *see also* Doc. 13-1 at 2.) In accordance therewith, Defendant entered into an

agreement with Plaintiff on May 1, 2014. (Doc. 13-2 ¶ 16; *see also* Doc. 13-1 at 2.) Under the

agreement, Plaintiff would perform emergency construction work on the Project. (Doc. 13-2 ¶

16; *see also* Doc. 13-1 at 2–3.)

Subsequently, on October 8, 2014, Plaintiff and Defendant supplemented their May 1 agreement. Briefly, in the addendum, Plaintiff agreed to make certain repairs to the emergency construction work that it had commenced (collectively, "Emergency Agreement"). (Doc. 13-2 ¶ 16; *see also* Doc. 13-1 at 3.) Plaintiff later filed suit claiming Defendant owes Plaintiff for work it performed under the Subcontract and Emergency Agreement. (Doc. 13-2 ¶ 16; *see also* Doc. 13-1 at 3.)

Even before this case's removal in the summer of 2015, the foregoing events had spawned two other suits. Defendant filed the first case ("Indemnity Suit"), seeking indemnity for losses and expenses Defendant has incurred by virtue of its execution of the Bond and in completing the Project from IPS and other non-party indemnitors. (Doc. 13-1 at 13.) Meanwhile, Plaintiff inaugurated the second action ("Declaratory Judgment Action"), a suit against would-be suppliers of required materials for the Project requesting that the Eastern District find Plaintiff is not liable under a contract where Plaintiff was required to purchase would-be suppliers' materials for use on the Project. (*Id.*)

## B.   PROCEDURAL BACKGROUND

On July 31, 2015, Liberty removed this originally filed state court action to this Court. (Doc. 1 at 1.) It filed an answer ("Answer") on August 11, 2015, (Doc. 3), and an amended notice of removal ("Amended Notice") on October 8, 2015, (Doc. 8). The Honorable Richard L. Bourgeois, Jr., issued a scheduling order in this matter on October 29, 2015. (Doc. 12.) On November 10, 2015, Liberty tendered the Motion to Transfer, (Doc. 13), and a briefing schedule was issued two days later, (Doc. 14). Liberty's amended answer arrived on November 30, 2015. (Doc. 15.) On December 1, 2015, Utility filed the Opposition. (Doc. 16.) Liberty countered with

the Reply on December 15, 2015. (Doc. 17.) On January 4, 2016, Utility submitted its own

answer to the counterclaim made by Liberty. (Doc. 18.) Having given the Parties notice on May

3, 2016, (Doc. 19), this Court heard argument on June 15, 2016, (Doc. 20).


C.    **PARTIES' ARGUMENTS**

In the Motion to Transfer, Defendant insists that Plaintiff's action should be transferred to

the Eastern District pursuant to § 1404(a) for one main reason: "[T]he Eastern District is clearly

more convenient for the parties and witnesses and transfer serves the interest of justice." (Doc.

13 at 1.) In support of its position, Defendant relies on the following set of facts: (1) relevant

physical evidence and documents are located in the Eastern District; (2) some key, non-party and

other potential witnesses reside and/or are employed in the Eastern District; (3) two lawsuits

arising out of the same construction project currently at issue have been filed in the Eastern

District; and (4) the Eastern District, along with its residents have a localized interest in the

adjudication of this case because the underlying facts are so closely connected to the Eastern

District. (*Id.*) Conversely, Defendant denies that this Court has any substantial connection to the

parties or causes of action; in fact, nothing but the barest of connections can be remotely

articulated. (*Id.*) In light of these facts and considering the public and private interest factors[2]

precedent requires transfer of the instant case to the Eastern District.

Plaintiff offers up a number of counters. First, according to Plaintiff, Liberty Mutual

failed to meet its significant burden of proof under § 1404, as Defendant cannot show that the

Eastern District is clearly more convenient or easier than litigating in the Middle District. (*See*

Doc. 16 at 1.) Second, courts typically deny motions to transfer venue when the proposed venue

---

[2] For a listing of these factors, see *supra* Part III.B.3

is a relatively short distance from the current venue, as here. In support, Plaintiff cites to several cases that denied a defendant's motion to transfer venue even where the current and proposed venues were more than 100 miles apart. (*Id* at 1–2.) Lastly, Plaintiff contends that the public and private interest factors do not favor transfer of Plaintiff's action to the Eastern District. Rather than directly responding to Defendant's contentions that the Eastern District enjoyed original jurisdiction over Plaintiff's action pursuant to § 1391(b)(2), Plaintiff confines its Opposition to attacking Defendant's application of the private interest factors as "conclusory" and "not well-taken" and application of the public interest factors as incomplete due to Defendant's stress on one factor. (*Id* at 4–5.)

Taking first the only public interest factor addressed in the memorandum supporting the Motion to Transfer, Plaintiff argues that the impact of the local interest factor is mitigated by the fact that both the Middle and Eastern District courthouses are located "away from but close to" the Project. (*Id* at 5.) Plaintiff also rebuts Defendant's final argument by asserting that the Fifth Circuit holds that a plaintiff's choice of venue is entitled to deference. (*Id.*)

Addressing next the factor—the relative ease of access to sources of proof—Plaintiff faults Defendant for failing to consider modern technology. (*Id.*) Hence, while much documentary evidence is located in the Eastern District, Defendant has not shown why its location imposes "even a slight burden." (*Id.*) In terms of convenience of witnesses, Plaintiff emphasizes that both Plaintiff and Defendant are non- Louisiana residents, neither district therefore more convenient for party-witnesses. (*Id.* at 6.) In this same vein, Plaintiff asserts again that Defendant has failed to demonstrate the unavailability of or potential prejudice to any witness if the trial were to be held in the Middle District. (*Id.*) Indeed, Plaintiff offers case law to

support its argument that the convenience of witnesses will not be considered as a factor where this demonstration has not been made. (*Id.*)

Finally, Plaintiff attempts to undermine Defendant's contention that judicial economy favors transfer. Plaintiff counters that at best, the present litigation is only "tangentially related" to Defendant's Indemnity Suit and Declaratory Judgment Action pending in the Eastern District. (*Id.*) In contrast to Defendant, Plaintiff argues that the Declaratory Judgment Action involves the scope of an arbitration provision contained in an unrelated contract with other parties and Defendant's Indemnity Suit is an action for indemnification under a General Indemnity Agreement, which action has been stayed. (*Id.* at 7.) Unlike these other suits, "[t]his is a simple suit for non-payment under a payment bond and under a direct contract between UCI and Liberty Mutual." (*Id.*) Whatever the similarities in proof required, Plaintiff concludes with a familiar saw: when viewed in toto, Defendant has not met its significant burden of showing that a trial in the Eastern District would be clearly more convenient than a trial in the Middle District. (*Id.*)

## III.   DISCUSSION

## A.   GOVERNING LAW

## 1.   Section 1404(a)

Intended to do more than codify existing law on forum *non conveniens*, *Norwood v. Kirkpatrick*, 349 U.S. 29, 30, 75 S. Ct. 544, 545, 99 L. Ed. 789, 792 (1955), § 1404(a) allows a defendant to transfer an action to a generally more convenient forum, 28 U.S.C. § 1404(a); *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 184 (E.D.N.Y. 2003). It reads: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district [] where it might have been brought or to any district or

division to which all parties have consented." 28 U.S.C. § 1404(a). To meet this statutory

burden, the movant must establish that: (1) venue is proper in the transferor district; (2) venue is

proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the

convenience of witnesses, and the interests of justice. *E.g.*, *In re Volkswagen of Am., Inc.*

*(Volkswagen II)*, 545 F.3d 304, 312 (5th Cir. 2008); *In re Volkswagen AG (Volkswagen I)*, 371

F.3d 201, 203 (5th Cir. 2004); *Broadnax v. ABF Freight Sys.*, 169 F.R.D. 628, 629 (N.D. Ill.

1996).

Statutorily, therefore, there always "exists a threshold inquiry [under § 1404] of whether

the suit could have originally been brought in the venue where the action is sought to be

transferred." *U.S. United Ocean Services, LLC v. Powerhouse Diesel Servs., Inc.* 832 F. Supp. 2d

717, 722 (E.D. La. 2013); *see also, e.g.*, *In re Horseshoe Entm't*, 337 F.3d 429, 434–35 (5th Cir.

2003). In other words, even before considering convenience and justice, *Excelsior Designs, Inc.*,

291 F. Supp. 2d at 185, a court must ensure that the district proposed could exercise personal

jurisdiction over the parties and subject matter jurisdiction over the suit. *See, e.g.*, *Sinochem Int'l*

*Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431, 127 S. Ct. 1184, 1191-92, 167 L. Ed. 2d

15 (2007); *Parish of Plaquemines v. Total Petrochemical & Refining USA,* Inc., 64 F. Supp. 3d

872, 880 (E.D. La. 2014). Otherwise, no transfer can be ordered. *See, e.g.*, *Schertenleib v.*

*Traum*, 589 F.2d 1156, 1161 (2d Cir. 1978); *Invivo Research, Inc. v. Magnetic Resonance*

*Equip.*, 119 F. Supp. 2d 433, 436 (S.D.N.Y. 2000). As the movant, Liberty Mutual bears the

burden of satisfying the inquiry that the action may have originally been filed in the Eastern

District. *See, e.g.*, *Black & Decker Corp. v. Vermont Am. Corp.*, 915 F. Supp. 933, 937 (N.D. Ill.

1995); *Crossroads State Bank v. Savage*, 436 F. Supp. 743, 744 (W.D. Okla. 1977).

2.    **Section 1391(b)(2)**

Section 1391(b)(2) provides: A civil action may be brought in . . . a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2).

The Fifth Circuit's leading case on this issue establishes that §1391 controls a plaintiff's choice

of venue "when no special, restrictive statute applies." *Volkswagen II*, 545 F.3d at 312. "Thus,

while a plaintiff has the privilege of filing his claims in any judicial division appropriate under

the general statute, §1404(a) tempers the effects of the exercise of this privilege." *Id* at 313.[3]

Under § 1391(b), "Although the chosen venue does not have to be the place where the

most relevant events took place, the selected district's contacts still must be substantial."

*McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008); *accord*

*Audubon Real Estate Assocs., LLC v. Audubon Realty, LLC*, No. 14-115, 2015 U.S. Dist. LEXIS

87758, at *9–10, 2015 WL 4094235, at *3 (M.D. La. July 7, 2015). Based on the relevant

jurisprudence, "[c]ourts have generally held the 'substantial parts of events' inquiry is resolved

by looking to the locale of alleged acts or omissions." *Audubon Real Estate Assocs., LLC,* 2015

U.S. Dist. LEXIS 87758, at *10, 2015 WL 4094235, at *3. The Fifth Circuit has found that "the

place of performance was the site at which delivery was to be made and that venue therefore

existed in that district." *Am. Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981).

Similarly, for an alleged breach of a non-compete agreement, the Eleventh Circuit found venue

to be proper where the contract was executed, intended to be performed, and later breached.

*Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). According to the Eleventh

---

[3] In a recent case, this Court saw no conflict between § 1404(a) and § 1391(b)(2) and relied upon
the latter in a motion based upon the former. *Norman v. H&E Equip. Servs.*, No. 3:14-CV-367,
2015 U.S. Dist. LEXIS 34928, at *13–14, 2015 WL 1281989, at *5 (M.D. La. Mar. 20, 2015).

Circuit, Congress most surely meant "to require courts to focus on relevant activities of the defendant, not the plaintiff." *Id* at 1371–72 (internal quotations and citation omitted).

3.      **Jurisprudential Construction of § 1404's Standard**

Mined from § 1404's plain text, the Fifth Circuit employs a two-part test—justice and convenience—to determine whether a transfer of venue is warranted.[4] *Volkswagen II*, 545 F.3d at 314. Crucial to this analysis is the apparent purpose animating §1404(a): To "prevent plaintiffs from abusing their privilege under §1391 by subjecting defendants to venues that are inconvenient under their terms." *Id* at 313. As the Court explained, "Congress, by the term 'for the convenience of the parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience." *Norwood*, 349 U.S. at 32. With modern precedent having relaxed the standard for a venue's transfer, courts continue to weigh the public and private interest factors ("*Gilbert* Factors") originally set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).[5] *Advance Prods. & Sys. Inc. v. CCI Piping Sys., LLC*, No. 2:14-CV-02456, 2015 U.S. Dist. LEXIS 26583, at *3, 2015 WL 920673, at *1–2 (W.D. La. Mar. 3, 2015) (summarizing the jurisprudence); *see also, e.g.*, *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (citing *Volkswagen II*, 545 F.3d at 315).

_____

[4] As a matter of law, in order to support a claim for transfer, the moving party must show that the statutory requirements are satisfied ***and*** clearly demonstrate that a transfer is for the convenience of the parties and witnesses and in the interest of justice.

[5] Nevertheless, the oft-cited general rule remains potent: "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508; *accord, e.g.*, *Neelan v. Bharti*, 596 F. App'x 532, 533 (9th Cir. 2014).

Generally, the factors total eight: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[6] *Volkswagen II*, 545 F.3d at 315. "These factors are not exhaustive or exclusive, and no single factor is dispositive." *Oxysure Sys., Inc. v. Castaldo*, No. 4:15-cv-00324, 2016 U.S. Dist. LEXIS 32905, at *5, 2016 WL 1031172, at *2 (E.D. Tex. Mar. 15, 2016); *accord Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 258 F.3d 326, 337, 340 (5th Cir. 2004).

**B.   APPLICATION**

**1.   Jurisdictional Grounds**

No jurisdictional objection can be lodged to this case's transfer for two reasons. First, Defendant consented to the personal jurisdiction of the Eastern District by failing to object in their papers or at oral argument. *See, e.g.*, *United States v. Grote*, 632 F.2d 387, 388–89 (5th Cir. 1980); *Frederick Goldman, Inc. v. Commemorative Brands, Inc.*, No. 04-CV-1100, 2004 U.S. Dist. LEXIS 7737, at *2, 2004 WL 954692, at *1 (S.D.N.Y. May 5, 2004); *Burrell v. State Farm Fire & Cas. Co.*, No. 00-CV-5733, 2001 U.S. Dist. LEXIS 9680, at *11, 2001 WL 797461, at *4 (S.D.N.Y. July 12, 2001). Second, as Defendant is a Massachusetts corporation that has its

---

[6] For example, the seventh and eighth have no relevance to an intrastate transfer to an equally knowledgeable district court, like that proposed by Defendant.

principal place of business in Boston, Massachusetts, and Plaintiff is a Mississippi citizen, complete diversity exists between Plaintiff and Defendant. Third, "UCI seeks to recover from Liberty Mutual damages in the amount of $890,100.00," (Doc. 1 ¶ 5), far more than $75,000.00, exclusive of interest and costs. Accordingly, the Eastern District's personal and subject-matter jurisdiction cannot be fairly disputed.

2.      **Venue Provisions**

The relevant venue provisions just as surely do not bar transfer, for § 1391(b)(2) permits Plaintiff to have originally filed its suit in the Eastern District because, as this matter's filings attest, a substantial amount of the events giving rise to this action occurred in the Eastern District. Plaintiff initiated the underlying suit to recover amounts it is allegedly owed for work performed under the Subcontract and Emergency Agreement. (Doc. 13-1 at 3.) Quite clearly, the work took place at the Project site in the Eastern District, and Plaintiff itself demanded payment, in writing, from IPS at its office, also located in the Eastern District. (*Id* at 6.)

In support of its claim, Plaintiff relies on the fact that the Project Engineer daily inspected its work at the Project site, certified payment for the work Plaintiff performed on the Project, and accepted such work, and each of these alleged actions occurred in the Eastern District, where both the Project site and the Project Engineer's office are located. (*Id.*) Likewise, Defendant predicates its counterclaim and defenses on Plaintiff's allegedly defective work, Plaintiff's every act undertaken in the Eastern District. (*See* Doc. 17 at 4.) Since precedent compels this Court to read § 1391(b)(2) and § 1404(a) in conjunction, *see supra* Part II.A.2, based on the uncontested facts, these related statutes lead to the same conclusion: Plaintiff's action may have originally

been brought in the Eastern District, a permissible and proper venue. *See In re Volkswagen I*, 371 F.3d at 203.

3.      **Private Interest Factors**

        As explicated by the Fifth Circuit, the private interest factors that this Court must consider number four: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses, i.e. the reach of the court's subpoena power; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S. Ct. 252, 258 n.6, 70 L. Ed. 2d 419, 426 n.6 (1981)); *accord, e.g.*, *Oxysure Sys., Inc.*, 2016 U.S. Dist. LEXIS 32905, at *5, 2016 WL 1031172, at *2; *In re TS Tech U.S. Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Considered cumulative, the private factors support this matter's transfer to the Eastern District.

a.      ***Sources of Proof***

        Only four facts matter for this calculus. First, the Project was commenced in order to construct a levee in the Eastern District. Second, the current litigation arose due to alleged non-payment under the Subcontract and Emergency Agreement that were entered into to secure completion of the Project. Third, Defendant asserts a counterclaim for alleged breach of contract related to Plaintiff's alleged defective performance on the Project. Indeed, by any reasonable reckoning, a primary source of proof for both Plaintiff and Defendant will be the Project site itself.[7] Fourth, in regard to Defendant's alleged non-payment, the sources of proof, as Defendant

_____

[7] Another example suffices to underscore this fact's importance. Observing that Project site may enable the jurors to determine whether Plaintiff performed defective work or in the alternative

correctly identifies, will be the documents that can "reflect the work that Plaintiff performed under the Subcontract and Emergency Agreement and any failures thereunder." (Doc. 13-1 at 9.) Such documents include invoices, payment requests, Project meeting minutes, work schedules, project schedules and the like, (*Id* at 8–9), and the parties most likely to be in possession of this alleged documentary evidence—IPS, the Project Engineer, and the Plaquemines Consultant who was also involved with the completion of the Project—currently maintain or, at the time of contracting for the Project, maintained an office in the Eastern District.

True, "although modern technology has not completely eliminated the issue of ease of access to sources of proof, it has significantly diminished the weight of that factor." (Doc. 16 at 5 (citing *AT&T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 U.S. Dist. LEXIS 25100, at *9-10 (N.D. Tex. 2009)).) However, the Fifth Circuit's *Volkswagen* decision has decidedly rejected the notion that document copying and storage technology rendered the factor of relative ease of access to proof unimportant." *Norman v. H &E Equip. Servs.*, 2015 U.S. Dist. LEXIS 34928, at *16, 2015 WL 1281989, at *6; *see also In re Volkswagen* II, 545 F.3d 304 at 315. Accordingly, with so much of the clearly relevant and potentially germane evidence located within the Eastern District, this factor strongly favors this matter's transfer.

### b.    *Districts' Relative Subpoena Power*

As the Eastern District and this Court wield equal subpoena power, this factor carries no import. Indeed, unlike here, this factor will only favor transfer where subpoena power cannot be exercised in the current venue, but can be exercised in the proposed venue. *See, e.g.*, *Volkswagen*

---

whether Plaintiff fulfilled its work obligations on the Project and Defendant has failed to compensate Plaintiff accordingly.

*II*, 545 F.3d at 316; *Volkswagen I*, 371 F.3d at 205 n.4. No such imbalance exists here, and this second factor is thus immaterial to the dispute at hand. *Cf. In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (observing that this factor weighs "heaviest in favor of transfer" only when a transferee venue has "absolute subpoena power," defined as the power to subpoena a witness for both trials and depositions).

c.      ***Witness Costs***

In explaining this third factor, the Fifth Circuit has adopted the "100 mile rule," which provides, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317. In its articulation of this rule, the Fifth Circuit has focused on the identity of key witnesses and the substance of their testimony, though a court should still consider "the parties and witnesses in *all* claims and controversies properly joined in a proceeding." *See Volkswagen I*, 371 F.3d at 203 (emphasis added). Indeed, "it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998). And it is "the location of key, non-party witnesses that dominates," *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 826 (S.D. Tex. 1993). Once such a lens is utilized, as the law requires, the balance decidedly favors Liberty.

Like the defendant in *In re Volkswagen*, Defendant has identified key witnesses who would have knowledge of the performance of the Project, any alleged failures arising therefrom, Plaintiff's workmanship, the circumstances triggering the instant litigation, the repairs Plaintiff

performed, the value of Plaintiff's work and the amount Defendant paid Plaintiff under both contracts. (*See* Doc. 13-1 at 9-11.) These matters are critical in determining whether Plaintiff is owed for work performed under the Subcontract and Emergency Agreement or, in the alternative, whether Plaintiff's work or repairs were defective and thus Plaintiff is not owed for any work performed. Though the suit was filed here, these pivotal witnesses either reside in or are employed in the Eastern District. "At a minimum, travel distance to the Eastern District Courthouse is an estimated 70.7 miles shorter for these witnesses than traveling to the Middle District Courthouse." (Doc. 13-1 at 11-12.) Logically, eliminating the need for witnesses to travel an additional 70.7 miles will be more convenient for those witnesses, even if that distance is less than 100 miles.

In sum, "when," as here, "nearly all of the nonparty [and party] witnesses that will testify concerning disputed issues reside elsewhere, this factor weighs in favor of transferring the case." *Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007). The convenience of even one key witness can often outweigh the convenience of numerous less important witnesses. *Watson v. Fieldwood Energy Offshore, LLC*, No. 3:15-CV-036, 2016 U.S. Dist. LEXIS 11307, at *10, 2016 WL 374494, at *4 (S.D. Tex. Feb. 1, 2016); *see also, e.g.*, *Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 401 –02 (N.D. Tex. 1984). As Defendant's affidavit ably demonstrates, more than one such key witness can be found with homes and places of employment closer to the Eastern District. For these reasons, this third factor favors a transfer.

**d.    *Judicial Economy***

Here, the most important consideration, one often emphasized in the courts' application of this fourth factor, is the extent to which the suits filed by Plaintiff and Defendant in the Eastern District, both currently pending, are related. Seemingly, Plaintiff's Declaratory Judgment Action is not related to the pending litigation, as "UCI's [D]eclaratory [J]udgment [A]ction deals with the scope of an arbitration provision contained in an unrelated contract with other parties," (Doc. 16 at 7). Nonetheless, while Plaintiff describes the present case as being "only tangentially related to [all] the other actions pending in the Eastern District," this assertion cannot withstand close scrutiny, for Defendant's Indemnity Suit, as characterized by the Parties themselves, is directly related to the pending litigation. Simply put, both actions will likely involve at least two, if not more, of the same witnesses as well as the same underlying facts about the Project. In particular, whether Defendant actually owes Plaintiff for work performed may yet depend on whether IPS was properly terminated and placed into default under the initial contract. If IPS was properly terminated, the court could, and likely would, find that Defendant was correct in taking over the Project and Plaquemines had a legitimate claim under the Bonds. On the other hand, if IPS was not properly put into default, then Defendant may not have been obligated to take over the Project, Plaquemines may not have had a legitimate claim against the Bonds and Defendant may not owe Plaintiff for work performed. Therefore, judicial economy would best be served by adjudicating both actions in the Eastern District.

**4.    Public Interest Factors**

The public interest factors number four: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of

unnecessary problems of conflict of laws or the application of foreign law. *Volkswagen II*, 545

F.3d 304 at 315. Like the private *Gilbert* factors, none of these four carries dispositive weight.

*Action Indus.,* 358 F.3d at 340. When totaled, the *Gilbert* public factors support transfer.


a.      ***Administrative Difficulties***

In applying this factor, courts "consider time between filing suit and trial." *Broussard*,

135 F. Supp. 3d at 548. Notably, "this factor is not entitled to much weight because it is the most

speculative, and this factor alone should not outweigh other factors." *Id.* Moreover, if a court is

"unaware of how its load compares to that of the [other potential district]" it is "unable to

determine whether this factor favors transfer." *Norman*, 2015 U.S. Dist. LEXIS 34928, at \*19,

2015 WL 1281989, at \*7. As neither Plaintiff nor Defendant has indicated which district has a

heavier case load,[8] this factor must be deemed neutral.


b.      ***Local Interest and Localized Controversies***

In *Norman*, this Court held that "this factor inquires as to whether the residents of the

venue chosen by the plaintiff have an interest -- that is, a stake -- in the resolution of his

controversy." 2015 U.S. Dist. LEXIS 34928, at \*20, 2015 WL 1281989, at \*8. For purposes of

this factor's analysis, three facts matter. First, while Plaintiff contends that the local interest

factor is mitigated by the fact that both courthouses are located away from the Project, the levee

---

[8] Plaintiff did assert at oral argument that discovery has been stayed by the Eastern District and
maintains that the present matter will be more quickly tried here than there. However, no certain
proof has been presented, and this mere possibility cannot alone outweigh the other factors'
cumulative weight.

was to be constructed in the Eastern District, the same District in which the proposed venue sits.

Second, Plaintiff does not allege that the residents of the Middle District have an interest in the

resolution of this controversy, and Defendant does allege that there is no connection between the

pending litigation and the Middle District. (Doc. 13-1 at 15.) Third, as this case's outcome

relates to the construction of a levee in the Eastern District and for the benefit of its residents,

jurors drawn from that district have a more real and cognizable interest in this particular lawsuit

than the wholly unconnected residents inhabiting this one. With the Eastern District's residents

the potential beneficiaries of a levee whose construction within their district's borders has now

engendered multiple disputes, *see also Goldstein v. RadioShack Corp.*, No. 6:06-CV-285, 2007

U.S. Dist. LEXIS 32278, at *12, 2007 WL 1342533, at *4 (E.D. Tex. May 1, 2007) ("Courts also

consider the local interest in having localized disputes decided at home."), this factor decidedly

favors transfer.


5.      **Plaintiff's Unconvincing Case Law**

        In support of its opposition, Plaintiff cites numerous cases from different courts that have

declined to transfer venue where the proposed venue is a "relatively short" distance from the

current venue. (Doc. 16 at 2–3.) As a threshold matter, two objections to this reliance can be

raised. First, Plaintiff has accorded too much weight to the distance between the courthouses, as

it is not a separate consideration according to the Fifth Circuit precedent. *See supra* Part IV.B.3.

Second, even assuming that this Court found the distance between the current and proposed

venues to be decisively significant, as explained below, each court had additional compelling

grounds for its decision to deny the defendants' motions to transfer venue.[9] Still, even though

_____

[9] Regardless, the instant case is distinguishable from all of the cases Plaintiff has cited to prove, in its words, that "[r]equests for short distance venue changes are typically rejected." (Doc. 16 at

Plaintiff's several cases do not outweigh the overwhelming balance of the private and public interest factors favoring this matter's transfer, this Court dissects each proffered case for the sake of completeness.

In *United Parcel Service of America, Inc. v. Brown*, the first cited case, (Doc. 16 at 2), the Southern District of New York denied a motion to transfer. Ostensibly, it did so because the defendant asserted relatively few facts to support its position that the proposed venue was more convenient; in point of fact, this district court found that the plaintiff would be inconvenienced by moving its case to another district. More importantly, the *Brown* court determined: "[T]here is a clear connection between this district and the facts of this litigation." *UPS v. Brown*, No. 08 Civ. 2902 (TPG), 2009 U.S. Dist. LEXIS 60502, at *3, 2009 WL 928292 (S.D.N.Y. Mar. 30, 2009). Quite simply, the "short distance" between the proposed and current venues did not itself suffice as a reason for the court's denial, a clear connection and an evidentiary failing far more crucial in its deliberations.

Plaintiff's next cited case can also be distinguished. (*See* Doc. 16 at 2.) In *Celgene Corp. v. Abrika Pharmaceuticals, Inc.*, the court found there to be no "appreciable difference" between the current and proposed venues after applying the public interest factors.[10] No. CIV S-04-1712 FCD DAD P, 2007 U.S. Dist. LEXIS 36202, at *16, 2007 WL 1456156, at *5 (D.N.J. May 17, 2007) (internal quotations and citation omitted). In finding that the defendants did not meet their burden, the court noted that the defendants did not even contend that the proposed venue was

---

2.) More specifically, Defendant has demonstrated factual bases, aside from the mere fact that the transferee district is 81 miles from the original district, for why Plaintiff's action should be transferred to a more convenient venue while the defendants in the following cases did not. *See supra* Part III.B.

[10] The defendants even conceded that there was no appreciable difference between the two courts.

more convenient, and the defendants strangely raised issues that did not warrant consideration in the §1404(a) analysis.[11] *See id.* Thus, as in *Brown*, the distance between the two venues was not as dispositive as Plaintiff here has implied.

Furthermore, one more fact differentiates the Motion to Transfer from that in *Celgene Corp*. Here, Defendant does, in fact, assert that the Eastern District is more convenient and has propounded facts to support that assertion. Particularly, Defendant has averred that the majority of the documentary evidence and the physical evidence is located in the Eastern District. (Doc. 13-1 at 8.) Defendant has also contended that "[t]ravel distance to the Eastern District Courthouse is notably shorter than travel distance to the Middle District Courthouse, for key, non-party witnesses and for a number of other potential non-party witnesses." (*Id* at 11.) On this same point, Defendant asserts that these same key, non-party witnesses either reside in or are employed in the Eastern District. (*Id.*) In direct contrast to the defendant in *Celgene Corp. v. Abrika Pharms, Inc.* Liberty has demonstrated an appreciable difference between the current and proposed venues, which cannot be negated by the mere fact that 81 miles is considered to be a "relatively short" distance.

The third case referenced suffers from other defects. (*See* Doc. 16 at 2.) In *Goldstein v. Radioshack Corp.*, the Eastern District of Texas denied a defendant's motion to transfer venue due to its failure to show that the proposed venue was "demonstrably more convenient." 2007 U.S. Dist. LEXIS 32278, at *17, 2007 WL 1342533, at *5. This determination was made only after weighing all of the relevant interest factors, including but not limited to, the distance

---

[11] The defendants' contention was that venue should be transferred from New Jersey to Delaware because Delaware is where they were incorporated and had "already submitted to the jurisdiction of the Court." The court found that neither of these issues were to be considered when deciding a §1404(a) motion to transfer.

between the two venues. The plaintiff filed its lawsuit pursuant to the ERISA, which caused the court to have a particularized interest in deferring to the plaintiff's choice of venue that does not exist in this case. Accordingly, the Eastern District declined to transfer venue even though the majority of the alleged wrongdoings occurred in the proposed venue because the "ERISA's remedial purposes favor broad availability of applicable venues." *Id* at \*9. Such additional deference for UCI's choice of venue is not implicated on these facts. Indeed, this Court has previously found that"[w]here the plaintiff is a nonresident of the chosen venue, or the operative facts underlying the plaintiff's action did not occur there, the plaintiff's choice should not be accorded substantial deference." *Norman*, 2015 U.S. Dist. LEXIS 34928, at \*15, 2015 WL 1281989, at \*6. As previously mentioned, Plaintiff is a Mississippi citizen and the dispute that triggered this litigation did not occur in the Middle District. (*See also, e.g.*, Doc. 8; Doc. 13-1 at 6-7.) With these facts both obvious and indisputable, Plaintiff's choice of venue is not entitled to the same weight as was the plaintiff's choice in *Goldstein v. Radioshack Corp.*

Similarly, the local interest in adjudicating the claim is much weaker in *Goldstein* than is the local interest in the instance case. In that case, the plaintiffs sought to represent a nationwide class of individuals, "and as such, the dispute is not localized in the sense that it involves only parties in a particular region." *Goldstein*, 2007 U.S. Dist. LEXIS 32278, at \*12-13, 2007 WL 1342533, at \*4. Here, on the other hand, the Eastern District has a very strong local interest in adjudicating this action as the case involves a dispute that arose from the construction of a levee for the Plaquemines Parish Government in Plaquemines Parish, Louisiana, which is only 22 miles from the proposed venue. (*See, e.g.*, Doc. 13-1 at 1; Doc. 16 at 4.)

The same cannot be said for the separate actions currently pending in the Eastern District. As previously discussed, *see supra* Part IV.B.c.iv, Defendant's Indemnity Suit against IPS stems from obligations connected to the completion of the Project. (*See also* Doc. 13-1 at 14.) Given that the commonality between each suit is the Project, each action will likely involve the same set of facts. Consequently, it cannot be said that the result of the Indemnity Suit, with which the Eastern District is already intimately familiar, will have no impact whatsoever on the outcome of the instant litigation. Of course, in both *Goldstein* and the instant case, the distance between the current and proposed venues was relatively short, but this similar fact, standing alone, is insufficient to warrant a denial of the Motion to Transfer in the case at bar.

Plaintiff's emphasis on the fourth case ignores several potent distinctions. (*See* Doc. 16 at 2.) In *Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau,* the Northern District of California court relied on several grounds in denying the defendant's motion to transfer venue. No. C 06-7028 MMC, 2007 U.S. Dist. LEXIS 31762, 2007 WL 1152682 (N.D. Cal. Apr. 18, 2007). First and foremost, the alleged wrongful conduct occurred ***solely*** in the current venue. *Id.* at *7. Unlike in *Flotsam*, the alleged wrongful conduct in this litigation occurred in the proposed venue. *See supra* Part III.A. Additionally, the defendant in *Flotsam* also failed to show, or even argue that the sources of proof would be more accessible in the current venue or less accessible in the proposed venue. The defendant's lack of persuasion on these points, coupled with the fact that both venues possessed important documentary evidence, resulted in a finding that this factor, the relative ease of access to sources of proof, was "at best, neutral." *Flotsam*, 2007 U.S. Dist. LEXIS 31762, at *6-7, 2007 WL 1152682, at *2. The facts here are, conversely, rather different, as Plaintiff itself has acknowledged.

Plaintiff's reliance on *Gent v. Pennsylvania State University*, Civ. Act. No. 05-5125, 2006 U.S. Dist. LEXIS 39679, 2006 WL 1686652 (E.D. Pa. June 14, 2006), is similarly erroneous. (Doc. 16 at 3.) There, the Eastern District of Pennsylvania not only applied additional factors to those articulated in *In re Volkswagen*; it proceeded to qualify the private and public interest factors in such a way that the defendant seemingly bore a heavier burden to show that transfer to a more convenient forum is warranted, applying unique Third Circuit case law. *Gent*, 2006 U.S. Dist. LEXIS 39679, at *2, 2006 WL 1686652, at *1. In particular, the court separately considered the plaintiff's choice of forum, the place where the claim arose, and the convenience of the parties "as demonstrated by their financial condition and physical location." *Id.* at *3. Unlike the Third Circuit, at least as its seminal opinion was construed in *Gent*, the Fifth Circuit has found that "the heavy *burden* traditionally imposed upon defendants by the *forum non conveniens* doctrine—was dropped in the §1404(a) context[,]" and that a district court errs when it requires the defendant to show that the §1404(a) factors "substantially outweigh the plaintiff's choice of venue" by giving "inordinate weight to the plaintiff's choice of venue." *Volkswagen II*, 545 F.3d at 314.

A Michigan case, again cited for its ruling regarding distance, cannot withstand scrutiny. (*See* Doc. 16 at 3.) True, the court in *Bay County Democratic Party v. Land* did discuss the distance between the current and proposed venues, but it ultimately concluded "An argument premised on inconvenience is difficult to accept when the defendants routinely conduct business around the state and their advocate routinely appears in court." *Bay Cnty. Democratic Party v. Land*, 340 F. Supp. 2d 802, 809 (E.D. Mich. 2004). The more significant consideration was that the defendant had such sufficient contacts in the entire state, moving the action 100 miles to a new district court would be only minimally more convenient. The "difficulty" presented to the

court by virtue of the defendant's contact with the current venue does not exist in the instant

case. As previously stated, Defendant is a Massachusetts company and Plaintiff is a Mississippi

company, (Doc. 16 at 6), and neither party alleges or asserts that Defendant has significant

contacts with the entire state of Louisiana. In fact, in its Opposition, Plaintiff does not even

allege that Defendant has significant contacts with the current venue.[12] This inconsistency, as

well as the fact that distance alone is not dispositive, further dampens *Bay County*'s cogency.

      Finally, in *Leesona Corp. v. Duplan Corp.*, the court only considered the 200 miles

between the current and proposed venues to be insignificant in terms of convenience of parties

and witnesses because the complexity of the underlying litigation required transfer. 317 F. Supp.

290, 299–300 (D.R.I. 1970). When it is perused with care, the differences with this case are

crucial, regardless of Plaintiff's protestations, (Doc. 16 at 3). Significantly, the *Leesona Corp.*

case involved multiple defendants with multiple claims that were in some way related. The

Rhode Island court had jurisdiction over all of the parties but could only adjudicate a portion of

the closely-related claims whereas the Eastern District of New York court could hear all claims

but only as to some parties. *Id.* This dilemma in mind, the court concluded that a final judgment

in the Rhode Island court could "fragment the pre-trial discovery and the trial of claims which

are so integrally related as to demand adjudication together." *Id* at 301. But this threat does not

exist here, for the Eastern District can try one and all claims presently before this Court.

---

[12] In Plaintiff's Opposition, Plaintiff focuses on Defendant's misapplication of the public and
private interest factors. Consequently, Plaintiff failed to address Defendant's contention that
Defendant's alleged contact (breaching its agreement with Plaintiff) and each of the events
giving rise to the current litigation, was confined to the Eastern District.

## IV.   CONCLUSION

"There can be no question but that the district courts have broad discretion in deciding whether to order a transfer." *Volkswagen II*, 545 F.3d at 311 (internal quotation marks omitted). Nevertheless, when the movant demonstrates that the transferee venue is clearly more convenient, good cause has been shown, and a transfer should be granted. In this proceeding, in accordance with this Circuit's well-settled jurisprudence, the existent facts support the Motion to Transfer Venue. Accordingly, for the foregoing reasons, this Court GRANTS Liberty Mutual Insurance Company's § 1404(a) Motion to Transfer Venue to More Convenient Forum, (Doc. 13).

Signed in Baton Rouge, Louisiana, on <u>July 25, 2016</u>.


_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**